1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **CENTRAL DISTRICT OF CALIFORNIA**

10

11  JODEY GALVAN,                      )   NO. EDCV 09-01310 SS
                                       )
12              Plaintiff,             )
                                       )
13          v.                         )   **MEMORANDUM DECISION AND ORDER**
                                       )
14  MICHAEL J. ASTRUE,                 )
    Commissioner of the Social         )
15  Security Administration,           )
                                       )
16              Defendant.             )
    _____)

17

18                             **INTRODUCTION**

19

20       Plaintiff Jodey Galvan ("Plaintiff") brings this action seeking to

21  reverse the decision of the Commissioner of the Social Security

22  Administration (the "Commissioner" or the "Agency") denying her

23  application for Disability Insurance Benefits ("DIB").  The parties

24  consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the

25  undersigned United States Magistrate Judge.  For the reasons stated

26  below, the decision of the Agency is REVERSED and REMANDED for further

27  proceedings.

28

**PROCEDURAL HISTORY**

On February 6, 2004, Plaintiff filed an application for DIB benefits claiming that she became disabled on December 19, 2003. (Administrative Record ("AR") 156-58). The Agency denied her application and she submitted a request for reconsideration on September 14, 2004. (AR 95). The Agency denied her application again on January 5, 2005. (AR 98-102). Plaintiff then requested a hearing, which was held before Administrative Law Judge ("ALJ") Keith F. Varni on April 14, 2006. (AR 45-66). Plaintiff appeared with counsel and testified. (AR 47-65).

On September 15, 2006, the ALJ issued a decision denying benefits. (AR 38-44). Plaintiff sought review before the Appeals Council, which vacated the decision on June 8, 2007 and remanded the matter for a new hearing. (AR 127-31). The Appeals Council determined that the ALJ had failed to adequately evaluate the medical opinion evidence, failed to adequately consider the Plaintiff's obesity, and failed to adequately consider lay testimony. (AR 129-30).

On January 23, 2008, the ALJ held a remand hearing. (AR 67-87). Plaintiff was again represented by counsel and testified. (AR 69-81). Joseph Mooney, a vocational expert, also testified at the hearing. (AR 81-84). On March 10, 2008, the ALJ issued a decision again denying benefits. (AR 19-32). Plaintiff sought review before the Appeals council, which denied her request on March 18, 2009. (AR 8-11). Plaintiff filed the instant action on July 10, 2009. Pursuant to the

Court's Case Management Order, the parties filed a Joint Stipulation ("Jt. Stip.") on December 30, 2009.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 416.920. The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

---

[1]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. § 416.910.

3

(3)   Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. § 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[2] age, education and work experience.  Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").

---

[2]   Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. § 416.945(a).

*Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000).

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since her alleged onset date. (AR 21). At step two, the ALJ found that Plaintiff had a "very questionable severe impairment in the musculoskeletal system from minimal degenerative changes and from a presumption of fibromyalgia." (*Id.*). The ALJ further concluded that Plaintiff's "medically determinable mental impairments of depression considered singly and in combination do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are nonsevere." (*Id.*). The ALJ explained that Plaintiff "has no restrictions in activities of daily living, mild limitations in social functioning, . . . no limitations in concentration, persistence, and pace[,]" and "has experienced no episodes of decompensation." (*Id.*).

At step three, the ALJ found that Plaintiff's impairments, either singly or in combination, do not meet or equal the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 22). At step four, the ALJ determined that Plaintiff retained a physical RFC for medium work, "except [that] she is able to frequently

climb, balance, stoop, kneel, crouch, and crawl." (AR 22).
Specifically, the ALJ found:

> The claimant's subjective complaints do not credibly
> establish a residual functional capacity less than that found
> herein. There is a lack of medical documentation of an
> impairment which would cause extreme pain or pain which would
> compromise the claimant's ability to perform work-related
> activities. Furthermore, this is based on more than a lack
> of objective evidence, but rather the entire record as a
> whole does not reveal that the claimant is precluded from
> performing all regular, sustained work activity. The
> claimant's treatment generally has been routine and
> conservative and objective diagnostic evidence show only mild
> degenerative disease with no significant evidence of
> persistent spasms, neurological deficits, or arthritic
> stigmata. There is no evidence of disuse muscle atrophy or
> wasting commonly associated with severe pain. Also there is
> no evidence of significant attention, concentration, or
> cognitive deficits. Furthermore, the claimant's treating and
> examining doctors all found the claimant noncompliant with
> treatment with suggestions of drug seeking behavior and any
> exacerbation caused by noncompliance is an additional basis
> for denying benefits. Consequently, I find that the
> claimant's allegations of pain and limitation are not fully
> credible and not consistent with the medical record (20 CFR
> 404.1529, Social Security Ruling 96-7p). Although it appears
> that the claimant experiences some pain due to degenerative

disease and fibromyalgia, it is not of the degree she alleges. In fact, the claimant testified at the hearing that she sees Dr. Frausto only once a month and she sees Dr. Katsaros every 6 to 8 weeks. The claimant also stated that Dr. Mohr is her primary care physician, but she has not seen Dr. Mohr in a while. Certainly, such treatment is not consistent with any debilitating condition or the alleged level of pain asserted by the claimant.

(AR 31).

At step five, the ALJ found that based on Plaintiff's age, educational background, work experience, RFC and the vocational expert's testimony, Plaintiff was "capable of performing past relevant work as a fiscal analyst. (AR 32). Accordingly, the ALJ found that Plaintiff was not disabled. (Id.).

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence

which a reasonable person might accept as adequate to support a conclusion." Id.  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

**DISCUSSION**

Plaintiff contends that the ALJ erred for two reasons.  First, she argues that the ALJ failed to adequately consider the evidence from treating psychiatrist Dr. Theresa Frausto in finding that she suffers no legally severe mental impairments.  (Jt. Stip. at 5-12).  Second, Plaintiff asserts that the ALJ failed to adequately incorporate limitations stemming from her fibromyalgia into her RFC.  (Jt. Stip. at 15-16).  For the reasons discussed below, the Court finds that the ALJ's decision should be reversed and this action remanded for further proceedings.

**A.   The ALJ Failed To Properly Assess Plaintiff's Mental Health Impairment At Step Two Of The Evaluation Process**

Plaintiff argues that the ALJ erred by finding that her mental impairment was not severe.  (Jt. Stip. at 5-12).  Specifically, Plaintiff complains that the ALJ's "characterization of her symptoms as

8

being no more than 'transient to mild, . . . flies in the face of the ongoing, significant findings on mental status examinations." (Jt. Stip. at 9). Plaintiff further contends that "the ALJ's finding that Dr. Frausto's notes contain no evidence to support the working diagnoses of bipolar disorder, ADHD, an eating disorder, or obsessive compulsive traits . . . is unsupported by any actual medical evidence other than the ALJ's lay opinion that the above-noted findings are somehow, from a psychiatric point of view, insufficient." (Jt. Stip. at 9-10).

By its own terms, the evaluation at step two is a de minimis test intended to weed out the most minor of impairments. See Bowen v. Yuckert, 482 U.S. 137, 153-54, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1290) (stating that the step two inquiry is a de minimis screening device to dispose of groundless claims). An impairment is not severe only if the evidence establishes "a slight abnormality that has no more than a minimal effect on an individuals ability to work." Smolen, 80 F.3d at 1290 (internal quotations and citations omitted).

The ALJ here applied more than a de minimis test when he determined that Plaintiff's mental impairment was not severe. Moreover, he failed to follow the Secretary's own regulations governing the evaluation of mental impairments, as described below.

Where there is evidence of a mental impairment that allegedly prevents the plaintiff from working, the Agency has supplemented the

five-step sequential evaluation process with additional regulations.[3]
<u>Maier v. Comm'r of the Soc. Sec. Admin.</u>, 154 F.3d 913, 914-15 (9th Cir.
1998) (per curiam) (citing 20 C.F.R. § 416.920a).  First, the ALJ must
determine the presence or absence of certain medical findings relevant
to the plaintiff's ability to work.   20 C.F.R. § 416.920a(b)(1).
Second, when the plaintiff establishes these medical findings, the ALJ
must rate the degree of functional loss resulting from the impairment
by considering four areas of function: (a) activities of daily living;
(b) social functioning; (c) concentration, persistence, or pace; and (d)
episodes of decompensation.  20 C.F.R. § 416.920a(c)(2)-(4).   Third,
after rating the degree of loss, the ALJ must determine whether the
claimant has a severe mental impairment.   20 C.F.R. § 416.920a(d).
Fourth, when a mental impairment is found to be severe, the ALJ must
determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart
P, Appendix 1.   20 C.F.R. § 416.920a(d)(2).   Finally, if a listing is
not met, the ALJ must then assess the plaintiff's RFC, and the ALJ's
decision "must incorporate the pertinent findings and conclusions"
regarding he plaintiff's mental impairment, including "a specific
finding as to the degree of limitation in each of the functional areas
described in [§ 416.920a(c)(3)]."  20 C.F.R. § 416.920a(d)(3), (e)(2).

    The regulations describe an impairment as follows:

    A physical or mental impairment must result from anatomical,
    physiological, or psychological abnormalities which can be

---

[3]   These additional steps are intended to assist the ALJ in
determining the severity of mental impairments at steps two and three.
The mental RFC assessment used at steps four and five of the evaluation
process, on the other hand, require a more detailed assessment.  Social
Security Ruling 96-8P, 1996 WL 374184 at * 4.

shown by medically acceptable clinical and laboratory
diagnostic techniques. A physical or mental impairment must
be established by medical evidence consisting of signs,
symptoms, and laboratory findings, not only by [a
plaintiff's] statements of symptoms.

20 C.F.R. § 416.908; see also Ukolov v. Barnhart, 420 F.3d 1002, 1005
(9th Cir. 2005) (noting that the existence of a medically determinable
physical or mental impairment may only be established with objective
medical findings) (citing Social Security Ruling 96-4p, 1996 WL 374187
at *1-2).

Here, Plaintiff's medical records show that she has obtained
psychiatric care from Dr. Frausto approximately monthly since June of
2003. (AR 528-43, 748). On June 11, 2003, Dr. Frausto noted that
Plaintiff had symptoms suggestive of severe Major Depression and bulemia
with mental status examination showing a suspicious attitude,
distractibility, rumination, impaired ability to manage daily living
activities, and impaired ability to plan ahead and see consequences.
(AR 542-43). Dr. Frausto prescribed Lexapro and Klonopin. (Id.). Dr.
Frausto assessed Plaintiff with a GAF of 50, which indicates severe
social and/or occupational function. (AR 543). Over the next two
months, Dr. Frausto made clinical findings that Plaintiff continued to
suffer from depression and anxiety. (AR 537-40). Dr. Frausto assessed
Plaintiff's GAF at 50 and 65 during this time period. (Id.).

On November 26, 2003, Dr. Frausto increased Plaintiff's dosage of
Lexapro and Neurontin. (AR 536). On March 3, 2004, Dr. Frausto

11

described Plaintiff as "look[ing] better" and "not fatigued" after she
successfully discontinued MS Contin, but noted that Plaintiff continued
to complain of fatigue and trouble sleeping.  (AR 533).  On June 25,
2004, Dr. Frausto noted that Plaintiff had lost 45 pounds after
undergoing gastric bypass surgery, but that she continued to suffer from
pain, fatigue, and poor sleep.  (AR 532).  On November 3, 2004, Dr.
Frausto described Plaintiff as having "lots of energy," but with
increased purging related to Plaintiff's bulimia.  (AR 529).  Dr.
Frausto further noted that she suspected bipolar disorder because
Plaintiff had maxed out all her credit cards and either gambles too much
or eats too much.  (Id.).  On November 17, 2004, Dr. Frausto noted that
Plaintiff was "tearful" and prescribed Lexapro and Abilify.  (AR 528).

On March 14, 2005, Dr. Frausto noted that Plaintiff continued to
show symptoms of bipolar disorder and had been binging and purging.  (AR
568-72).  On April 4, 2005, Dr. Frausto described Plaintiff as "tired
looking" and noted that she was "mourning the pope."  (AR 606).  Over
the next two months, Dr. Frausto continued to indicate that Plaintiff
suffered from bipolar disorder.  (AR 603-05).  On October 10, 2005, Dr.
Frausto diagnosed Plaintiff with bipolar disorder, ADHD, and OCD.  (AR
641).  In November and December of 2005, Dr. Frausto diagnosed Plaintiff
with bipolar disorder, OCD, ADHD, and fibromyalgia.  (AR 639-40).  On
January 9, 2006, Dr. Frausto noted that Plaintiff was more anxious, more
depressed, and "[could not] put sentences together."  (AR 636).

In a summary report dated January 23, 2006, Dr. Frausto diagnosed
Plaintiff with bipolar disorder, ADHD, OCD, and bulimia.  (AR 624).  Dr.
Frausto noted that Plaintiff was "compliant with all appointments and

with her medications," which included Depakote, Abilify, Cymbalta, and Concerta. (Id.). However, Dr. Frausto noted that Plaintiff's symptoms have persisted despite the medications:

> The symptoms have become worse over the last five years. She is either very depressed or irritable. She gets obsessed and preoccupied with death, fear of dying or suicidal. She has poor concentration and her thoughts become easily disorganized. She has difficulty making decisions. She is anxious and gets panic attacks if she goes into stores or in public places where there are a lot of people. She requires the assistance of her husband for daily activities of living. Her husband manages the checkbook because of [Plaintiff's] poor judgment, impulse control and hyper-spending. Her husband also does all the cooking and shopping for food. [Plaintiff] will often requires assistance with bathing due to depression, lack of energy and chronic pain.

(Id.).

On February 6, 2006, Dr. Frausto noted that Plaintiff had completed an inpatient detoxification program for reliance on opioid medications, but that Plaintiff continued to show signs of bipolar disorder, OCD, and ADHD. (AR 637). On February 27, 2006, Dr. Frausto noted that Plaintiff continued to show signs of bulimia, had a "[b]lunted affect," and was "preoccupied with food." (AR 635). On March 20, 2006, Dr. Frausto noted that Plaintiff's sleep cycle was fluctuating dramatically from only a few hours on some nights to more than twelve hours on other

nights.  (AR 696).  On June 26, 2006, Dr. Frausto noted that Plaintiff
was "tired looking" and had a "sad blunted affect."  (AR 694).  In
October and November of 2006, Dr. Frausto noted that Plaintiff was
feeling "hopeless" and admitted to suicidal and homicidal thoughts.  (AR
692-93).

These objective medical findings indicate that Plaintiff suffered
from a mental health impairment.  See 20 C.F.R. § 416.927(a)(2)
("Medical opinions . . . that reflect judgments about the nature and
severity of [a plaintiff's] impairment(s), including symptoms, diagnosis
and prognosis," are evidence that a plaintiff may submit in support of
his disability claim).  The ALJ, however, failed to follow the
Secretary's regulations for evaluating mental impairments.  Moreover,
the ALJ found that Plaintiff had "no restrictions in activities of daily
living, mild limitations in social functioning, and no limitations in
concentration, persistence, and pace."  (AR 21).  The ALJ did not state
the basis for these conclusions and as set forth above, they are
directly contradicted by the great weight of objective medical evidence.

Remand for further proceedings is appropriate where additional
proceedings could remedy defects in the Commissioner's decision.  See
Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000); Kail v. Heckler,
722 F.2d 1496, 1497 (9th Cir. 1984).  Because the ALJ improperly
evaluated Plaintiff's mental health impairment at step two, the case
must be remanded to remedy this defect.

Upon remand, the ALJ must conduct the supplemental evaluation of
mental impairment evidence.  Normally, the ALJ must first determine the

14

presence or absence of certain medical findings relevant to the plaintiff's ability to work. 20 C.F.R. § 416.920a(b)(1). However, this Court has determined that there is objective medical evidence that Plaintiff suffers from a mental impairment relevant to her ability to work. Thus, the ALJ need not address this question. Accordingly, the ALJ must only complete the remaining inquiries required in the supplemental evaluation of mental impairment evidence.[4]

**B.   On Remand The ALJ Should Consider Limitations Stemming From Plaintiff's Fibromyalgia In The RFC Assessment**

In assessing RFC, the ALJ must consider limitations and restrictions imposed by all of the claimant's impairments, even those that are not severe. See Celaya v. Halter, 332 F.3d 1177, 1181-82 (9th Cir. 2003). Here, the ALJ determined that Plaintiff retained a physical RFC for medium work, "except [that] she is able to frequently climb, balance, stoop, kneel, crouch, and crawl." (AR 22). This RFC, however, is inconsistent with the medical evidence that Plaintiff has been diagnosed with fibromyalgia.

---

[4]   Specifically, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(2)-(4). Next, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. § 416.920a(d). If the mental impairment is found to be severe, the ALJ must determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920a(d)(2). Finally, if a listing is not met, the ALJ must then assess the plaintiff's RFC, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding he plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 416.920a(c)(3)]." 20 C.F.R. § 416.920a(d)(3), (e)(2).

Indeed, the ALJ acknowledged Plaintiff's fibromyalgia, but concluded that Plaintiff's subjective pain testimony was not credible:

> Although it appears that the claimant experiences some pain due to degenerative disease and fibromyalgia, it is not of the degree she alleges. In fact, the claimant testified at the hearing that she sees Dr. Frausto only once a month and she sees Dr. Katsaros every 6 to 8 weeks. The claimant also stated that Dr. Mohr is her primary care physician, but she has not seen Dr. Mohr in a while. Certainly, such treatment is not consistent with any debilitating condition or the alleged level of pain asserted by the claimant.

(AR 31).

As set forth above, the ALJ relied on Plaintiff's frequency of treatment to discredit her subjective pain testimony. (AR 31). Specifically, the ALJ concluded that Plaintiff's frequency of seeing her primary care physician, Dr. Gina Mohr, was "not consistent with any debilitating condition or the alleged level of pain asserted by the claimant." (Id.). However, Plaintiff testified that she stopped seeing Dr. Mohr regularly because of the cost. (AR 73) ("I have to, I woudl have to pay her in order to get a referral that I don't need so I don't generally go through her anymore."); see also Smolen, 80 F.3d at 1284 ("Where a claimant provides evidence of a good reason for not taking medication for her symptoms, her symptom testimony cannot be rejected for not doing so."). Indeed, Plaintiff explained that her ability to

seek medical care was limited by a recent change in her insurance and the fact that she has "so many financial problems."  (AR 73).

Moreover, the Court notes that objective symptoms "do not establish the presence or absence of fibromyalgia."  <u>Jordan v. Northrop Grumman Corp. Welfare Plan</u>, 370 F.3d 869, 872 (9th Cir. 2004).  As stated in <u>Jordan</u>:

> [F]ibromyalgia's cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective.  There are no laboratory tests for the presence or severity of fibromyalgia.

<u>Id.</u>  Instead, a fibromyalgia diagnosis can only be confirmed by a specific test where a patient reports pain in five parts of the body and when at least eleven of eighteen points cause pain when palpated by an examiner's thumb.  <u>Id.</u> (citing <u>Rollins v. Massanari</u>, 261 F.3d 853, 855 (9th Cir. 2001)).  Because Plaintiff suffers from fibromyalgia, the ALJ should not rely on general objective findings to determine related limitations for Plaintiff's RFC.

On remand, the ALJ should consider limitations stemming from Plaintiff's fibromyalgia in the RFC assessment.  Further, the ALJ cannot discredit Plaintiff's subjective pain testimony based on her frequency of medical treatment because she testified that she has severe financial limitations.

\\

1

**CONCLUSION**

2

3      Consistent with the foregoing, IT IS ORDERED that judgment be

4  entered REVERSING the decision of the Commissioner and REMANDING this

5  matter for further proceedings consistent with this decision.  IT IS

6  FURTHER ORDERED that the Clerk of the Court serve copies of this Order

7  and the Judgment on counsel for both parties.

8

9  DATED: February 26, 2010

10

11                                    _____/S/_____
                                     SUZANNE H. SEGAL
12                                   UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28